UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
RAYMOND COLLETTE, on behalf of himself,
individually, and all other persons similarly situated,

                          Docket No.:

              Plaintiff,

       -against-                         **COMPLAINT**

SUFFOLK AUTO DRIVING SCHOOL, INC.,
TWIN COUNTY DRIVING SCHOOL, INC. and
JOSEPH CURATOLO,

              Defendants.
----------------------------------------------------------------------X

       Plaintiff, RAYMOND COLLETTE, on behalf of himself, individually, and all other

persons similarly situated, by and through his counsel, the Law Office of Peter A. Romero PLLC,

complaining of the Defendants, SUFFOLK AUTO DRIVING SCHOOL, INC., TWIN COUNTY

DRIVING SCHOOL, INC. and JOSEPH CURATOLO (collectively as "Defendants"), allege as

follows:

### NATURE OF THE CLAIM

       1.     Plaintiff brings this action to recover unpaid overtime wages under the Fair Labor

Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law Articles 6 and 19,

§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R.

Part 142 ("NYLL"), unpaid minimum wages under the NYLL, unpaid wages stemming from

Defendants' failure to pay Plaintiff wages for all hours worked at his agreed upon rates of pay

under the NYLL, unpaid spread of hours compensation under the NYLL, failure to provide

accurate wage statements for each pay period under NYLL § 195(3), failure to furnish a wage

notice upon his hire under NYLL § 195(1), unjust enrichment and quantum meruit under New

York common law, for retaliation under the FLSA, 29 U.S.C. § 215(a)(3), for retaliation under the NYLL, NYLL § 215(1), and any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff brings this lawsuit against the Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA.  Plaintiff brings his claims under the NYLL on behalf of himself, individually, and on behalf of any FLSA Collective Action Plaintiff, as that term is defined below, who opts-in to this action.

3.      Plaintiff also brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable six-year limitations period for those who suffered damages as a result of the Defendants' violations of the NYLL, the supporting New York State Department of Labor regulations and for damages for violations of New York common law.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this United States District Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of New York.

## THE PARTIES

6.      At all times relevant, Plaintiff RAYMOND COLLETTE ("Plaintiff" or "Romero") was and is a resident of the County of Suffolk, State of New York.

7.      At all times relevant, Plaintiff Collette was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e) and NYLL § 190(2).

8.      At all times relevant, Defendant, SUFFOLK AUTO DRIVING SCHOOL, INC. (hereinafter "Suffolk Driving School") is and was a domestic business corporation with a principal place of business located at 30 Vernon Valley Road, East Northport, New York 11731.

9.      At all relevant times, Suffolk Driving School was subject to the requirements of the FLSA because, upon information and belief, it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to vehicles, fuel for vehicles, computers and other electronic equipment, office supplies, printers, printer ink, paper, pens, and other equipment and materials.

10.      At all times relevant, Defendant Suffolk Driving School was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and NYLL § 190(3).

11.      At all times relevant, Defendant, TWIN COUNTY DRIVING SCHOOL, INC. (hereinafter "TCDS") is and was a domestic business corporation with a principal place of business located at 30 Vernon Valley Road, East Northport, New York 11731.

12.      At all relevant times, TCDS was subject to the requirements of the FLSA because, upon information and belief, it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to vehicles, fuel for vehicles, computers and other electronic equipment, office supplies, printers, printer ink, paper, pens, and other equipment and materials.

13.     At all times relevant, Defendant TCDS was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and NYLL § 190(3).

14.     At all times relevant, Defendants Suffolk Driving School and TCDS are two corporations that operate jointly as a common enterprise.  Suffolk Driving School and TCDS jointly operate a single business that operates a driver instruction school and that jointly employed Plaintiff.  Defendants Suffolk Driving School and TCDS share interrelated operations, common management, a centralized control of labor relations, and common financial control within their businesses.  Defendant JOSEPH CURATOLO owns and operates both Defendants Suffolk Driving School and TCDS.  Defendants Suffolk Driving School and TCDS share common facilities at their mutual place of business at 30 Vernon Valley Road, East Northport, New York 11731.  Additionally, Plaintiff performed services mutually to both corporations at any given time as the services were for the mutual benefit and interest of both corporations simultaneously.

15.     At all times relevant, Defendant, JOSEPH CURATOLO, is and/or was an officer, president or owner of both Suffolk Driving School and TCDS, had authority to make payroll and personnel decisions for both Suffolk Driving School and TCDS, was active in the day to day management of both Suffolk Driving School and TCDS, including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and is liable to Plaintiff as an "employer" within the meaning of the FLSA and NYLL.

## FACTS

16.     Defendants operate a driver instruction school that provides classroom and in-vehicle driving instruction throughout Long Island, New York.

**<u>Defendants' Unlawful Compensation Practices</u>**

17.     Defendants employed Plaintiff Collette as a driving instructor from in or about June 2018 through on or about September 3, 2022.

18.     Throughout his employment, Plaintiff Collette was responsible primarily for performing in-vehicle driving lessons to student drivers, assisting driving students with completing their in-vehicle driver's license exam at driver's license testing facilities, teaching classroom-based driving instruction courses at Defendants' facility covering, *inter alia*, defensive driving and courses required to obtain a driver's license, and performing certain paperwork and office tasks at Defendants' facility.

19.     Throughout his employment, Plaintiff performed these services in Nassau County and Suffolk County, New York.

20.     Throughout his employment, Plaintiff regularly worked six days per week on Monday through Saturday from between approximately 7:00 a.m. and 9:00 a.m. until between approximately 4:15 p.m. and 9:00 p.m., or sometimes even later.  Throughout his employment, Plaintiff sometimes worked a seventh day on Sunday.  Plaintiff commonly taught classroom-based driving instruction courses at Defendants' facility, which typically lasted five hours per class, on approximately one to two days per week, and sometimes taught even more classes during his workweek.  Accordingly, Defendants required Plaintiff to work, Plaintiff did regularly work, well in excess of forty hours during each workweek, typically working between 50 and 60 hours per workweek, and sometimes even more hours each workweek.

21.     Throughout his employment, Defendant commonly failed to afford Plaintiff an uninterrupted meal period during his workday.  Throughout his employment, Defendant only

afforded Plaintiff an uninterrupted meal period of 30 minutes on or about two to three workdays per workweek, and sometimes even less frequently.

22.   Throughout his employment, Defendants paid Plaintiff his regular hourly rates of pay for performing in-vehicle driving lessons and assisting driving students with completing their in-vehicle driver's license exam.  However, Defendants paid Plaintiff only a fixed amount of hours per service provided, regardless of the length of time that Plaintiff actually worked to perform these services.

23.   Specifically, throughout his employment, Defendants paid Plaintiff for one hour of work at his regular hourly rate of pay for each in-vehicle driving lesson performed, regardless of the amount of time that is required to perform that lesson and any associated paperwork.

24.   Throughout his employment, Defendants paid Plaintiff for two hours of work at his regular hourly rate of pay for each instance that he assisted driving students with completing their in-vehicle driver's license exam, regardless of the amount of time that is required to perform each service.

25.   Throughout his employment, Plaintiff regularly performed work in excess of the amount of hours paid for these services performed without additional hourly compensation.  For example, Plaintiff was regularly required to work 2.5 hours, or sometimes even more hours, to complete each instance of an in-vehicle driver's license exam without any additional compensation.

26.   Throughout his employment, Defendants paid Plaintiff a regular hourly rate of pay of between $15.50 per hour to $19.00 per hour – subject to the allotted one or two hour increments discussed above – for performing in-vehicle driving lessons and appointments for an in-vehicle driver's license exam, depending on the time period.

27.     Throughout his employment, Defendants paid Plaintiff a fixed *per diem* rate of pay of $140.00 for each classroom-based driving instruction course that he taught, regardless of the amount of time required to perform this service.

28.     Throughout his employment, Defendants required Plaintiff to travel from each client's location or Defendants' facility to each subsequent scheduled appointment to perform his duties as part of his workday, commonly requiring numerous periods of travel during each workday.  Throughout his employment, Defendants did not pay Plaintiff at any rate of pay for these hours worked.

29.     Throughout his employment, Defendants scheduled the timing of Plaintiff's client appointments and classroom lessons.

30.     Throughout his employment, Plaintiff would commonly travel from each client appointment to his subsequent client appointment and, due to the timing, would arrive early to his next in-vehicle driving lesson or in-vehicle driver's license examination.  During such instances, Plaintiff was required to wait to commence the client's appointment and was unable to use this time for any personal endeavors or to return to his home.  During such instances, Plaintiff was engaged to wait until he could perform his assigned services.  Throughout his employment, Defendants did not pay Plaintiff at any rate of pay for these compensable hours worked.

31.     Throughout his employment, Defendants would commonly schedule Plaintiff's appointments with brief periods of time between each appointment.  These brief periods of time were limited and the duration of such periods did not permit Plaintiff to use this time for any personal endeavors or to return to his home.  Instead, during such instances, Plaintiff was required to wait to commence his client's appointment or to begin his travel to his next client's appointment for Defendants' benefit.  During such instances, Plaintiff was engaged to wait until he could

perform his assigned services.  Throughout his employment, Defendants did not pay Plaintiff at any rate of pay for these compensable hours worked.

32.     Throughout his employment, on multiple occasions per workweek, Plaintiff would appear for an in-vehicle driving lesson or in-vehicle driver's license examination only to suffer a cancellation by the student upon arrival or be notified of a cancellation while en route to the client's location.  However, throughout his employment, Defendants only paid Plaintiff for services that were fully completed and paid for by the client.  As a result, Plaintiff was not compensated at any rate of pay for any of his time worked with respect to these cancellations, including refusing to compensate Plaintiff for his hours spent traveling to and from the cancelled appointment, any wait time at the appointment, his time interacting with a customer up to the point of their cancellation, or his time engaged to wait until his next client appointment during the time period that he would otherwise have been providing an in-vehicle driving lesson or in-vehicle driver's license examination.

33.     On rare occasions, Defendants were paid a minimal cancellation fee by students for appointments that were cancelled after Plaintiff arrived for or was travelling en route to the student's appointment.  On these rare occasions, Defendants paid Plaintiff a portion of that cancellation fee – typically paying Plaintiff $15.00 of the $40.00 cancellation fee – which amounted to less than his ordinary rates for his services.

34.     Throughout his employment, Defendant required Plaintiff to appear at Defendants' facility on Mondays for approximately two hours, and sometimes even longer, to complete certain paperwork and office tasks.  Throughout his employment, Defendants did not pay Plaintiff at any rate of pay for these hours worked.

35.     By way of example, during the workweek of December 13, 2021 through December 19, 2021, Plaintiff worked on: (1) Monday from 8:45 a.m. until 4:45 p.m. (8 hours); (2) Tuesday from 8:15 a.m. until 5:00 p.m. (8 hours 45 minutes); (3) Wednesday from 8:15 a.m. until 5:00 p.m. (8 hours 45 minutes); (4) Thursday from 7:00 a.m. until 5:00 p.m. (10 hours); (5) Friday from 7:45 a.m. until 5:00 p.m. (9 hours 15 minutes); and (6) Saturday from 8:45 a.m. until 5:00 p.m. (8 hours 15 minutes).  Accordingly, Defendants required Plaintiff to work, and Plaintiff did work, a total of 53 hours during this workweek.

36.     By way of another example, during the workweek of June 20, 2022 through June 26, 2022, Plaintiff worked on: (1) Monday from 8:45 a.m. until 5:15 p.m. (9 hours 30 minutes); (2) Tuesday from 8:15 a.m. until 9:00 p.m. (12 hours 45 minutes); (3) Wednesday from 8:45 a.m. until 5:30 p.m. (9 hours 45 minutes); (4) Thursday from 9:45 a.m. until 5:15 p.m. (7 hours 30 minutes); (5) Friday from 8:45 a.m. until 3:45 p.m. (7 hours); and (6) Saturday from 8:00 a.m. until 1:30 p.m. (5 hours 30 minutes).  Accordingly, Defendants required Plaintiff to work, and Plaintiff did work, a total of 52 hours during this workweek.

37.     By way of another example, during the workweek of July 25, 2022 through July 31, 2022, Plaintiff worked on: (1) Monday from 8:00 a.m. until 6:00 p.m. (10 hours); (2) Tuesday from 8:00 a.m. until 9:00 p.m. (11 hours); (3) Wednesday from 7:15 a.m. until 6:00 p.m. (10 hours 45 minutes); (4) Thursday from 9:00 a.m. until 6:30 p.m. (9 hours 30 minutes); (5) Friday from 9:00 a.m. until 4:15 p.m. (7 hours 15 minutes); and (6) Saturday from 8:15 a.m. until 12:45 p.m. (4 hours 30 minutes).  Accordingly, Defendants required Plaintiff to work, and Plaintiff did work, a total of 53 hours during this workweek.

38.     By way of another example, during the workweek of August 8, 2022 through August 14, 2022, Plaintiff worked on: (1) Monday from 8:00 a.m. until 6:15 p.m. (10 hours 15

minutes); (2) Tuesday from 8:00 a.m. until 3:15 p.m. (7 hours 15 minutes); (3) Wednesday from 8:00 a.m. until 6:15 p.m. (10 hours 15 minutes); (4) Thursday from 8:00 a.m. until 6:30 p.m. (10 hours 30 minutes); (5) Friday from 8:00 a.m. until 6:45 p.m. (10 hours 45 minutes); and (6) Saturday from 8:30 a.m. until 2:45 p.m. (6 hours 15 minutes).  Accordingly, Defendants required Plaintiff to work, and Plaintiff did work, a total of 55 hours and 25 minutes during this workweek.

39.     Throughout his employment, despite regularly working in excess of forty hours per workweek, Defendants failed to pay Plaintiff at the statutorily required overtime rate of one and one-half times his regular rate of pay or the applicable minimum wage, whichever is greater, for hours worked in excess of forty hours, in violation of the FLSA and NYLL.

40.     Throughout his employment, Defendants commonly failed to pay Plaintiff at any rate of pay for many of his hours worked during each workweek.  As a result, throughout his employment, Defendants failed to pay Plaintiff for many hours of work each workweek at his statutorily mandated overtime rate of pay, the mandated minimum wage under the NYLL, at his agreed upon rate of pay under the NYLL, and failed to pay him in accordance with New York common law.

41.     Moreover, during many workweeks of his employment, Plaintiff's wages, when his weekly wages are converted to an entirely hourly regular rate of pay by operation of law, results in an hourly rate of pay below the mandated minimum wage in violation of the NYLL.

42.     Throughout his employment, Plaintiff commonly worked a daily shift that exceeded ten hours per day from its start to its finish.  However, Defendants failed to pay Plaintiff spread-of-hours compensation of one additional hour at the applicable minimum wage rate for each work day that exceeded ten hours, in violation of the NYLL.

43.     Throughout his employment, Defendants failed to track Plaintiff's actual hours worked and failed to pay Plaintiff in accordance with his actual hours worked during each workweek, in violation of the FLSA and NYLL.

44.     Defendants failed to provide Plaintiff with a notice and acknowledgement of his wage rate in his primary language upon Plaintiff's hire as required by NYLL § 195(1).

45.     Throughout his employment, Defendants failed to provide Plaintiff with accurate statements of his wages earned, including his correct hourly rates of pay, his correct amount of regular and overtime hours worked, and his correct gross wages, net wages and deductions, for each pay period as required by NYLL § 195(3).

46.     Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and NYLL by failing to record Plaintiff's actual hours worked, failing to pay him accordance with his hours worked, and failing to pay him at any rate of pay for many of his hours worked during each workweek.

47.     Moreover, throughout his employment, Plaintiff repeatedly complained to Defendants regarding their unlawful compensation structure, failure to pay him overtime wages, and failure to pay any wages for many of his hours worked, in violation of the FLSA and NYLL.

48.     Despite these complaints, Defendants failed to remedy these FLSA and NYLL violations or correct their corporate-wide pay practices, and continued to deprive Plaintiff of his lawfully earned wages.

49.     In response to complaints about Defendants' failure to pay Plaintiff for work performed for client appointments that were ultimately cancelled by clients, Defendants repeatedly and callously informed Plaintiff that Defendants would not pay Plaintiff any wages for his hours

worked unless Defendants were paid for the services by the client, in a clear violation of the FLSA and NYLL.

50.     As a result, Defendants continued to willfully and intentionally violate the FLSA and NYLL by failing to remedy Defendants' FLSA and NYLL violations or correct their corporate-wide pay practices despite being repeatedly informed by Plaintiff of Defendants' obligation to pay overtime compensation and other lawful wages due for all of his hours worked.

51.     Defendants treated and paid Plaintiff and the putative class and collective action members in the same or similar manner pursuant to Defendants' corporate-wide payroll and employment practices.

**Defendants Engaged in Unlawful Retaliation Against Plaintiff**

52.     Additionally, throughout his employment, and with increasing frequency during the last year of his employment, Plaintiff repeatedly complained to Defendants regarding their unlawful compensation structure, failure to pay overtime wages, and failure to pay wages at any rate of pay for his hours worked, in violation of the FLSA and NYLL.

53.     Soon after these complaints, Defendants repeatedly reduced Plaintiff's scheduled hours worked during certain workweeks, thereby depriving him of compensation earned, to punish Plaintiff for engaging in protected activity under the FLSA and NYLL.

54.     Soon after complaints made in or about August 2022, Defendants suddenly and drastically reduced Plaintiff's scheduled work hours to just ten hours of work per week during Plaintiff's last three weeks of employment, thereby depriving him of nearly all of his compensation that he ordinarily earned, to punish Plaintiff for engaging in protected activity under the FLSA and NYLL.

55.     Defendants' drastic reduction in compensation removed Plaintiff's ability to earn a living wage through gainful employment, simply because of Defendants' spiteful desire to retaliate against Plaintiff for engaging in protected activity under the FLSA and NYLL.

56.     As a result of this diminution in compensation, Defendants constructively discharged Plaintiff on or about September 3, 2023.

57.     Additionally, commencing soon after his complaints, Defendants consistently engaged a course of targeted harassment against Plaintiff, including leveling excessive and unfounded criticisms of Plaintiff, engaging in abusive tactics, telling Plaintiff that they intended to "teach [him] a lesson," and assigning Plaintiff increased and excessive workloads that were disproportionately greater than his co-workers, causing him to work without breaks by scheduling his appointments back to back, and seeking to deliberately cause Plaintiff stress and discomfort.

58.     In response, Plaintiff repeatedly complained to Defendants that they were engaging in abusive and retaliatory conduct.

59.     During his employment, and with significantly increased frequency during the last year of his employment, Defendants' frequent tirades of harassment caused Plaintiff to suffer stress, anxiety, panic attacks and emotional breakdowns.

60.     Thus, Defendants repeatedly deprived Plaintiff of compensation and constructively discharged Plaintiff from his employment, as well as engaged in a course of inexcusable harassment, based on retaliatory animus for engaging in protected activity under the FLSA and NYLL.

61.     Defendants' unlawful conduct – including extensively harassing Plaintiff, depriving him of compensation, and constructively discharging his employment – operates to dissuade reasonable workers from asserting their rights under the FLSA and NYLL.

62.     Plaintiff has and will continue to suffer damages as a result of Defendants' retaliatory conduct.

## COLLECTIVE ACTION ALLEGATIONS

63.     At all times relevant, Plaintiff and other FLSA Collective Action Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decisions, policies, plans and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them proper overtime compensation for hours worked in excess of forty (40) hours each week.

64.     Upon information and belief, there are many current and former employees who are similarly situated to the Plaintiff who have been underpaid in violation of the FLSA.  The named Plaintiff is representative of those other workers and is acting on behalf of the Defendants' current and former employees' interests as well as his own interest in bringing this action.

65.     Plaintiff seeks to proceed as a collective action with regard to the First Claim for Relief, pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following similarly situated employees:

> All non-exempt persons who are currently, or have been employed by the Defendants as a driving instructor and/or in any other similarly-situated position at any time during the three (3) years prior to the filing of their respective consent forms ("FLSA Collective Action Plaintiffs").

66.     The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).  The FLSA Collective Action Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.  These similarly situated employees should be notified of and allowed to opt-into this action pursuant to 29 U.S.C. § 216(b).  Unless the Court

promptly issues such a notice, persons similarly situated to the Plaintiff, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled and which has been unlawfully withheld from them by the Defendants.

## CLASS ACTION ALLEGATIONS

67.     Plaintiff brings his Second through Ninth Claims for Relief on behalf of himself and a class of persons under Fed. R. Civ. P. 23 consisting of all persons who are currently, or have been, employed by the Defendants as a non-exempt driving instructor and/or in any other similarly-situated position at any time during the six (6) years prior to the filing of this Complaint (hereinafter referred to as the "Class" or the "Class Members").

68.     The Class Members are readily ascertainable.  The number and identity of the Class Members are determinable from the records of Defendants.  The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Fed. R. Civ. P. 23.

69.     The proposed Class is numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) individuals who are currently, or have been, employed by the Defendants as a driving instructor and/or in any other similarly situated position at any time during the six (6) years prior to the filing of this Complaint.

70.     Defendants have acted and/or have refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

71.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)     Whether Defendants failed and/or refused to pay the Plaintiff and Class Members overtime compensation for hours worked in excess of forty hours in a single workweek;

(b)     Whether Defendants failed and/or refused to pay the Plaintiff and Class Members at their applicable minimum wage rates during each workweek;

(c)     Whether Defendants failed and/or refused to pay the Plaintiff and Class Members for all hours up to forty hours per week at their agreed upon rates of pay;

(d)     Whether Defendants failed and/or refused to pay the Plaintiff and Class Members spread of hours compensation when their workday exceeded ten hours per day from its start to its finish;

(e)     Whether Defendants failed and/or refused to pay the Plaintiff and Class Members in a manner that violated New York common law;

(f)     Whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and Class Members;

(g)     Whether Defendants failed to furnish the Plaintiff and Class Members with a notice of their wage rate upon their hire;

(h)     Whether Defendants failed to furnish the Plaintiff and Class Members with accurate wage notices for each pay period;

(i)     Whether Defendants' general practice of failing and/or refusing to pay Plaintiff and Class Members overtime pay, minimum wage, spread of hours pay, and/or other required compensation was done willfully and/or with reckless disregard of the state wage and hour laws;

(j)     Whether Defendants took any active steps to ascertain and comply with the state wage and hour laws regarding their payment of wages to Plaintiff and Class Members;

    (k)     Whether Defendants failed to keep and maintain true and accurate payroll records for all hours worked by Plaintiff and the Class;

    (l)     Whether Defendants failed to keep and maintain true and accurate records of tips and gratuities earned by Plaintiff and the Class;

    (m)    Whether Defendants' policies, practices, programs, procedures, protocols, and plans regarding keeping and maintaining payroll records complied with the law; and

    (n)     What was the nature and extent of the Class-wide injury and the appropriate measure of damages for the class.

72. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All of the Class Members were subject to the same corporate practices of Defendants. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, harms and damages arising from the same unlawful policies, practices, and procedures.

73. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.

74. Plaintiff has retained counsel competent and experienced in class actions, wage and hour litigation, and employment litigation.

75. A class action is superior to other available methods for the fair and efficient adjudication of litigation, particularly in the context of wage and hour litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants, especially in light of the relatively minimal damages owed to each individual putative Class Member.

76.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  The adjudication of individual litigation of claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant savings of these costs.

77.     The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that may result in inconsistent judgments about Defendants' practices.

78.     Furthermore, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide Class Members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

**FIRST CLAIM FOR RELIEF**
**(FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES)**

79.     Plaintiff, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

80.     Defendants employed Plaintiff and persons similarly situated to Plaintiff for workweeks longer than forty (40) hours and willfully failed to compensate them for all of their

hours worked in excess of forty (40) hours per week at a rate of at least one and one-half times their regular hourly rate or the applicable minimum wage, whichever is greater, in violation of the FLSA.

81.     Defendants' violations of the FLSA, as described in this Complaint, have been willful and intentional.

82.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

83.     As a result of Defendants' unlawful acts, Plaintiff and persons similarly situated to Plaintiff are entitled to recover overtime compensation in amounts to be determined at trial, liquidated damages, attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (NEW YORK LABOR LAW – UNPAID OVERTIME WAGES)

84.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

85.     Defendants employed Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action for workweeks longer than forty (40) hours and failed to compensate the Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action for all hours worked in excess of forty (40) hours per week, at a rate of at least one and one-half times their regular hourly rate or the applicable minimum wage, whichever is greater, in violation of the NYLL.

86.     By Defendants' failure to pay Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action proper overtime wages for hours worked in excess of 40

hours per week, Defendants violated the NYLL, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including 12 N.Y.C.R.R. § 142.

87.     Defendants' violations of the NYLL, as described in this Complaint, have been willful and intentional.

88.     Due to Defendants' violations of the NYLL, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are entitled to recover from Defendants unpaid overtime wages, liquidated damages, reasonable attorneys' fees, costs of this action, and interest as permitted by law.

## THIRD CLAIM FOR RELIEF
## (NEW YORK LABOR LAW – MINIMUM WAGES)

89.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

90.     Defendants employed Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, and willfully failed to pay Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, the applicable minimum wage rates for hours worked during certain workweeks, in violation of the NYLL and the supporting New York State Department of Labor Regulations.

91.     Defendants' violations of the NYLL, as described in this Complaint, have been willful and intentional.

92.     Due to Defendants' violations of the NYLL, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, are entitled to recover from Defendants unpaid minimum wage compensation, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

**FOURTH CLAIM FOR RELIEF**
**(FAILURE TO PAY WAGES DUE UNDER NYLL)**

93.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

94.     NYLL §§ 190, 191, 198 and 663(1) require that employers pay wages to their employees in accordance with their agreed terms of employment.

95.     Defendants failed to compensate Plaintiff, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action at their regular rates of pay for certain hours that they worked in accordance with their agreed terms of employment.

96.     Defendants' violations of the NYLL, as described in this Complaint, have been willful and intentional.

97.     Plaintiff, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action are entitled to recover compensation for all hours worked for Defendants but for which Defendants did not provide compensation at their regular rate of pay.

98.     Plaintiff, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action are also entitled to liquidated damages, attorneys' fees, costs, and interest for Defendants' failure to pay wages in accordance with their agreed terms of employment.

**FIFTH CLAIM FOR RELIEF**
**(SPREAD OF HOURS VIOLATION UNDER NYLL)**

99.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

100.     Defendants failed to pay Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action one additional hour of pay at the basic minimum wage rate for each day that their spread of hours exceeded ten in violation of NYLL § 650 *et seq.* and 12 NYCRR §142-2.4.

101.     Defendants' violations of the NYLL, as described in this Complaint, have been willful and intentional.

102.     For the foregoing reasons, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are entitled to recover unpaid spread of hours compensation, liquidated damages, attorneys' fees, costs of this action and interest as permitted by law.

**SIXTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 195(1))**

103.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

104.     Defendants failed to provide Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action with a written notice upon hire, and failed to provide same in their primary language, regarding their rate of pay; the basis of their rate of pay; the employee's regular pay day; the name, address and telephone number of the employer; and other information, as required by NYLL § 195(1).

105.     Due to Defendants' failure to provide Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action with the notice required by NYLL § 195(1), Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are entitled to statutory damages, reasonable attorneys' fees and costs of this action.

## SEVENTH CLAIM FOR RELIEF
## (VIOLATION OF NEW YORK LABOR LAW § 195(3))

106.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

107.    Defendants failed to provide Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action with accurate statements of their wages earned, including, *inter alia*, their correct hourly rates of pay, their correct amount of regular and overtime hours worked, and their correct gross wages, net wages and deductions, for each pay period as required by NYLL § 195(3).

108.    Due to Defendants' failure to provide Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action with accurate wage statements with their wages as required by NYLL § 195(3), Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are entitled to statutory damages, reasonable attorneys' fees and costs of this action.

## EIGHTH CLAIM FOR RELIEF
## (UNJUST ENRICHMENT)

109.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

110.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action performed work for the benefit of Defendants, at Defendants' behest, for which Defendants failed to pay them at regular rates of pay or any rates of pay for many hours worked, or at reduced rates of pay below their agreed upon rates of pay, for certain hours worked by them.

However, Defendants retained those wages and compensation owed to the Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action and they have not been paid those wages and compensation.

111.    Due to Defendants' conduct in violation of New York common law, Defendants were enriched at the expense of Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action and it is against equity and good conscience to permit Defendants to retain what is sought to be recovered.

**NINTH CLAIM FOR RELIEF**
**(QUANTUM MERUIT)**

112.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

113.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action performed work and other valuable services for the benefit of Defendants, at Defendants' behest, which were accepted by Defendants.

114.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action performed work and other valuable services for Defendants with the expectation that they would be compensated for their work.

115.    Defendants failed to compensate Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action at their regular rates of pay or any rates of pay for many hours worked, or at reduced rates of pay below their agreed upon rates of pay, for certain hours worked by them for Defendants.

116.    Due to Defendants' conduct in violation of New York common law, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are entitled to the

recovery of the reasonable value of the services that they provided to Defendants, Defendants were enriched at the expense of Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, and it is against equity and good conscience to permit Defendants to retain what is sought to be recovered.

117.   As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action have sustained and are entitled to recover damages, costs of this action, and interest as permitted by law.

## TENTH CLAIM FOR RELIEF
### (RETALIATION IN VIOLATION OF THE FLSA)

118.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

119.   29 U.S.C. § 215 prohibits employers from discharging or in any other manner discriminating against an employee because an employee has made a complaint relating to improper payment of wages under the FLSA and/or for engaging in protected activity under the FLSA.

120.   As described above, Defendants are employers within the meaning of the FLSA while Plaintiff is an employee within the meaning of the FLSA.

121.   As also described above, Defendants retaliated against Plaintiff for engaging in protected activity under the FLSA.

122.   Due to Defendants' violations of the FLSA's anti-retaliation provisions, Plaintiff is entitled to compensatory damages, back pay, front pay, employee benefits Plaintiff would have otherwise received, damages for emotional pain, suffering, humiliation and embarrassment, punitive damages, liquidated damages, attorneys' fees, and costs.

## ELEVENTH CLAIM FOR RELIEF
### (RETALIATION IN VIOLATION OF THE NYLL)

123.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

124.    Section 215 of the NYLL prohibits employers from retaliating against an employee because an employee has made a complaint relating to improper payment of wages under the NYLL and/or for engaging in protected activity under the NYLL.

125.    As described above, Defendants are employers within the meaning of the NYLL while Plaintiff is an employee within the meaning of the NYLL.

126.    As also described above, Defendants retaliated against Plaintiff for engaging in protected activity under the NYLL.

127.    Due to Defendants' violation of the NYLL's anti-retaliation provisions, Plaintiff is entitled to compensatory damages, back pay, front pay, employee benefits Plaintiff would have otherwise received, damages for emotional pain, suffering, humiliation and embarrassment, punitive damages, liquidated damages, attorneys' fees, costs and interest as permitted by law.

128.    At or before the filing of this Complaint, Plaintiff has served notice of the action upon the Office of the New York State Attorney General.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, FLSA Collective Action Plaintiffs and Class Action Plaintiffs pray for the following relief:

i.    An order restraining Defendants from any retaliation against Plaintiff, Class Action Members and FLSA Collective Action Plaintiffs for participation in any form in this litigation;

ii.     Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under Fair Labor Standards Act, and its supporting regulations, and the New York Labor Law, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

iii.    Designation of this action as an FLSA collective action on behalf of the Plaintiff and FLSA Collective Action Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective Action Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

iv.     Certification of a class action pursuant to Fed. R. Civ. P. 23;

v.      Unpaid wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.* and the supporting United States Department of Labor regulations;

vi.     Unpaid wages, including but not limited to unpaid overtime pay, minimum wages, unpaid wages owed at their agreed upon rates of pay, spread of hours pay, and/or other forms of compensation, pursuant to the NYLL and Department of Labor Regulations, plus an amount equal to liquidated damages;

vii.    Damages for violations of NYLL § 195(1), (3);

viii.   Damages relating to the unlawful violation of the New York common law with respect to unjust enrichment and quantum meruit;

ix.     All damages recoverable due to Defendants' unlawful retaliatory conduct, including but not limited to any compensatory damages for back pay, front pay,

employee benefits Plaintiff would have otherwise received, damages for emotional

pain, suffering, humiliation and embarrassment, and liquidated damages;

x.      Punitive damages as permitted by law;

xi.     All attorneys' fees incurred in prosecuting these claims;

xii.    All costs incurred in prosecuting these claims;

xiii.   Pre- and post-judgment interest as permitted by law; and

xiv.    Such other and further relief as this Court deems just and proper.

Dated:  Hauppauge, New York
        March 21, 2023

> LAW OFFICE OF PETER A. ROMERO PLLC
> *Attorneys for Plaintiff*
> 490 Wheeler Road, Suite 250
> Hauppauge, New York 11788
> Tel.: (631) 257-5588
>
> By:     _____
>         DAVID D. BARNHORN, ESQ.
>         PETER A. ROMERO, ESQ.