

Peter A. Romero, Esq.
David D. Barnhorn, Esq.

Matthew J. Farnworth, Esq.

July 12, 2024

<u>Via ECF</u>
Hon. Steven Tiscione
United States Magistrate Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re: *Raymond Collette v. Suffolk Auto Driving School, Inc.*
      <u>Docket No.: 23-cv-02149 (NRM) (ST)</u>

Dear Judge Tiscione:

  This firm represents Plaintiff Raymond Collette in the above referenced action against Defendants Suffolk Auto Driving School, Inc., Twin County Driving School, Inc., and Joseph Curatolo (collectively as "Defendants"). Plaintiff bring claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), unpaid minimum wages under the NYLL, unpaid wages stemming from Defendants' failure to pay Plaintiff wages for all hours worked at his agreed upon rates of pay under the NYLL, unpaid spread of hours compensation under the NYLL, failure to provide accurate wage statements for each pay period under NYLL § 195(3), failure to furnish a wage notice upon his hire under NYLL § 195(1), unjust enrichment and quantum meruit under New York common law, and for retaliation under the FLSA, 29 U.S.C. § 215(a)(3) and the NYLL, NYLL § 215(1). Defendants deny Plaintiff's claims. The parties have reached a resolution of this action. Accordingly, Plaintiff now submits this motion for approval, pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiff's FLSA claims.[1] The parties' proposed Settlement Agreement and Release (the "Agreement") is attached as Exhibit A.

  The settlement agreement between the Plaintiff and the Defendants provides for payment of a gross sum of $47,500.00, inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiff will receive a total of $30,431.34, and Plaintiff's counsel will receive a total sum of $17,068.66, consisting of $15,215.66 for attorneys' fees (i.e. 1/3 of

---

[1] The parties do not seek the Court's approval with respect to the settlement of Plaintiff's non-FLSA claims as there is no requirement for the Court to do so. However, although non-FLSA claims do not require the Court's approval, the parties' settlement agreement, attached as Exhibit A, includes the resolution of all of Plaintiff's claims asserted in this lawsuit.

490 Wheeler Road, Suite 277, Hauppauge, New York 11788   •   (631) 257-5588   •   overtimelawny.com

the net settlement amount after deducting costs from the gross settlement amount) and $1,853.00 for litigation costs.

**The Court Should Approve the Settlement Agreement as Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Defendants operate a driver instruction school that provides classroom and in-vehicle driving instruction throughout Long Island, New York. Plaintiff contends that that corporate defendants operate as one common enterprise, despite multiple corporate entities, and were joint employers. Plaintiff alleges that he worked as a driving instructor for Defendants from in or about June 2018 through on or about September 3, 2022. Plaintiff contends that he was responsible primarily for performing in-vehicle driving lessons to student drivers, assisting driving students with completing their in-vehicle driver's license exam at driver's license testing facilities, teaching classroom-based driving instruction courses, and performing certain paperwork and office tasks at Defendants' facility.

Plaintiff alleges that, throughout his employment, he regularly worked six days per week on Monday through Saturday, and sometimes on Sunday, and that he regularly worked more than forty hours per workweek during many workweeks. Plaintiff asserts that, throughout his employment, Defendants paid him a regular hourly rate of pay but that Defendants paid him a fixed amount of hours per service provided, regardless of the length of time that Plaintiff actually worked to perform these services. Plaintiff alleges that he regularly performed work in excess of the fixed amount of hours paid for these services performed without additional hourly compensation. Plaintiff also asserts that, throughout his employment, he was not paid or was underpaid for performing certain duties, including, *inter alia*, for time spent traveling between scheduled client appointments, for time spent waiting for scheduled client appointments to begin, for client appointments cancelled while he was travelling to or already arrived at the client's location, and for performing certain paperwork and office tasks. As a result, despite typically working in excess of forty hours in a workweek, Plaintiff alleges that Defendants failed to pay him at his proper, statutorily

mandated overtime rate of pay of one and one-half times his applicable regular rate of pay for his hours worked in excess of forty hours each workweek in violation of the FLSA.

Critically, the parties have several key disputes that impact liability and damages. As an initial matter, Defendants assert that Plaintiff is exempt under the FLSA's professional exemption or learned professional exemption. Plaintiff vehemently contests that a driving instructor falls within this exemption. Although some teachers are exempt under the FLSA, Plaintiff contends that his position with Defendants does not qualify as a covered teacher position at a genuine "educational establishment." Plaintiff argues that this exemption is intended to apply to formal educators, like high school teachers and trade school instructors. Plaintiff also contends that a driving instruction school is not a qualifying "educational establishment" as that terms in intended to apply to traditional, formal educational institutions, such as elementary and secondary educational institutions (i.e. public and private elementary, middle and high schools) and career-based educational institutions (i.e. trade schools or colleges). More generally, Plaintiff also alleges that he does not possess the requisite "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction" and was not paid a salary during his employment. *See* 29 CFR § 541.300; 29 CFR § 541.301. While Plaintiff strongly believes the applicable regulations and case law supports his arguments, Defendants have provided case law that supports many of their arguments. Thus, it is difficult to predict whether the Court would find that this exemption applies to Plaintiff's employment. If this matter had not settled, Defendants intended to serve a motion to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(c) based on this exemption and, if that motion was denied, would have moved again for summary judgment based on this exemption after completing discovery.

In the event that Defendants fail to prove this exemption, Defendants also strenuously contest the number of hours worked by Plaintiff each week, asserting that Plaintiff worked fewer hours each week than alleged and worked far fewer overtime hours during his employment than alleged. Defendants also contend that certain hours worked by Plaintiff, including Plaintiff's time spent travelling between appointments and waiting for subsequent appointments to begin, are not compensable hours. Defendants would have supported their contentions regarding Plaintiff's hours worked with documentary evidence at trial, which would create an additional hurdle for Plaintiff to overcome at trial. Additionally, Defendants contend that Plaintiff is not entitled to liquidated damages, whereas Plaintiff asserts that liquidated damages should be awarded because Defendants cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA.

The resolution of these disputes would have a significant outcome on Plaintiff's ability to establish liability and, if liability is proven, on the amount of his damages awarded at trial. Specially, if Defendants' contentions regarding Plaintiff's hours worked were credited by a jury, Plaintiff's damages would be substantially reduced. If Defendants' contentions that Plaintiff was exempt from overtime were credited by a jury, Plaintiff would not be able to establish liability for unpaid overtime wages and would not receive any wages under the FLSA. Each of these disputes will turn on the unpredictable resolution of multiple legal disputes and the credibility of the parties.

Plaintiff calculated his damages in order to assess his best possible recovery in this litigation. Making all reasonable assumptions in his favor, according to Plaintiff's calculations, Plaintiff's best potential recovery under the FLSA at trial amounts to $9,112.53 for unpaid FLSA overtime wages and $9,112.53 for FLSA liquidated damages. In contrast, Defendants contend that Plaintiff is not entitled to any damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in formal written and document discovery, and depositions of Plaintiff, Defendants, and likely several non-party witnesses. This settlement also avoids potential motions to dismiss the Complaint and for summary judgment, and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiff, even if he is successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn substantially upon the resolution of key legal disputes and the credibility of the parties, which will determine both liability and the amount of Plaintiff's damages that may be awarded. Worse still, Plaintiff faces the risk that he could fail to establish liability entirely if Defendants establish that he was an exempt employee. As a result, all parties face a serious risk of losing at trial, in whole or in part. Even if Plaintiff were successful on his FLSA wage claims, but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiff would not be entitled to liquidated damages under the FLSA, reducing Plaintiff's available FLSA damages by half. If Defendants could establish that the alleged violations were not willful, Plaintiff's FLSA claims would be subject to a two-year statute of limitations, which would further reduce Plaintiff's damages to $7,854.78. Thus, by settling at this stage, Plaintiff ensures that he will receive a substantial recovery in this matter. Indeed, Plaintiff will be receiving all of his alleged unpaid wages and liquidated damages under the FLSA, even after deducting for attorneys' fees and costs.

Accordingly, although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the significant possibility that he could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiff will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, the release in the Agreement is limited to wage-related claims and Plaintiff's other pleaded claims. The release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. See Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" but notes additional claims may be released in appropriate circumstances); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse or overreach in settlements). Here, the release is narrowly tailored to release only claims relevant to or asserted in the instant

action. Likewise, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood, 2015 WL 4111668, at *1 (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181). Additionally, the parties have not included a non-disparagement clause.

### The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable

In addition to assessing the reasonableness of the settlement award, most courts since Cheeks have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $15,215.66, which is an amount equal to one-third of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2) (same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases,

district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiff's counsel's requested fees of one-third of the net settlement sum after deducting for litigation costs is certainly reasonable.

Here, Plaintiff's counsel investigated the Plaintiff's claims, conducted a detailed inquiry regarding Plaintiff's job duties, hours worked and compensation received, and Defendants' compensation policies, exchanged relevant discovery, engaged in legal research relating to Defendants' alleged exemption defense, created an assessment of Plaintiff's damages, negotiated a settlement in principle, and negotiated the parties' formal settlement agreement. Due to the contingent nature of the case, Plaintiff's counsel undertook these efforts with no ultimate guarantee of compensation. Plaintiff's counsel was zealous in the pursuit of Plaintiff's litigation objectives and secured a favorable result on the Plaintiff's behalf. The settlement will be made available to the Plaintiff without the uncertainty and delay of trial.

Lastly, Plaintiff's counsel seeks reimbursement for $1,853.00 in advanced litigation costs, representing $402.00 for the filing fee for the Complaint, $401.00 for service of process of the Summons and Complaint, and $1,050 for the mediator's fees and expenses. Copies of available invoices as annexed as Exhibit B.

Accordingly, Plaintiff's counsels' requests for attorneys' fees in the amount of $15,215.66 and expenses in the amount of $1,853.00 should be approved as reasonable.

In light of the foregoing, the parties respectfully request that the Court approve the parties' settlement and dismiss this matter with prejudice, while retaining jurisdiction over matter to enforce the terms of this settlement.

Plaintiff thanks the Court for its consideration of these requests.

Respectfully submitted,

*David Barnhorn*

_____
DAVID D. BARNHORN, ESQ.

C:   All Counsel of Record *via* ECF